MICHAEL H. ROUSH
City Attorney (SBN 072456)
City of Pleasanton
123 Main Street, P.O. Box 520
Pleasanton, CA 94566
Telephone: (925) 931-5015
FAX: (925) 931-5482
mroush@ci.pleasnton.ca.us

Attorney for Defendants
CITY OF PLEASANTON, PLEASANTON POLICE DEPARTMENT,
JEFF LAGUERO, AARON FOUNTAIN, JOSEPH BUCKOVIC,
BARRY MICKLEBURGH, CRAIG EICHER, KRIS PHELPS,
DALY HARNISH, AND LIZ FLOREZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAMEER RIAZ AZAM, | Case No.: C05-00510 MHP (PR) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF PLEASANTON, et al., | Date: N/A |
| Defendants. | Dept.: 15 (Honorable Marilyn Hall Patel) |
| | Date Action Filed: February 3, 2005 |
| | Trial Date: Not set |

# **TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   Plaintiff's Attacks on, and Threats to, Jennifer Bascom . . . . . . . . . . . . . . .  2

B.   Police Investigate Reports of the August 30 Kidnapping of Jennifer Bascom .  3

C.   The Amber Alert Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

D.   The City of Pleasanton Had Adopted the Amber Alert Protocol . . . . . . . . . .  6

E.   The Police Department Concludes that the Amber Alert
     Criteria Had Been Met . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

F.   The Police Department Disseminates Information about the Kidnapping . . .  7

G.   Alina and Ms. Bascom Are Finally Released by Plaintiff . . . . . . . . . . . . . . .  8

H.   The District Attorney Files Criminal Charges against Plaintiff and
     He Is Found Guilty of Having Violated Penal Code Sections 137(c) and
     422 on August 30, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A.   Standard of Review for Summary Judgment Motions . . . . . . . . . . . . . . . . 11

B.   The Statements in the Amber Alert that Plaintiff Was a Kidnapper and
     Middle Eastern Were True or Substantially True and Defendants
     Were Not Negligent in Making Such Statements; Nothing in the Amber
     Alert Identified Plaintiff as Armed and Dangerous . . . . . . . . . . . . . . . . . . 12

     1.   It Was True or Substantially True, and Defendants Had Reasonable
          Cause to Believe, that Plaintiff Had Kidnapped His Victims . . . . . . . . . . 14

     2.   Defendants Had Probable Cause to Believe That It Was True That
          Plaintiff Was Middle Eastern. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     3.   There is No Evidence That the Amber Alert Identified Plaintiff as
          Armed And Dangerous But If He Were So Identified, Defendants
          Had Reasonable Cause to Believe That Statement Was True . . . . . . . . . . 16

**C.**   **Azam's Claim for Malicious Prosecution Fails.** . . . . . . . . . . . . . . . . . . . . . . . . .   16

      1.   Plaintiff's Section 1983 Malicious Prosecution Claim Fails as to the
          Penal Code Sections 137(c) and 422 Counts because He Was
          Convicted for these Crimes Which Convictions Have Been Upheld on
          Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

      2.   Plaintiff's Claim for Malicious Prosecution as to the Remaining Count
          (Penal Code §273.6(a)) Fails because the Decision by the Prosecutor
          to Bring Criminal Charges Was Independent of the Police . . . . . . . . . . . . . . .   18

**D.**   **Plaintiff's Due Process Claim Fails Because There Was Probable**
      **Cause To Arrest Him** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

**E.**   **Plaintiff's Section 1983 Claims Against the City (and its Police**
      **Department) Fail Because There is No Evidence of Inadequate Training**
      **or Any Evidence of a Policy or Practice Giving Rise to a Constitutional**
      **Violation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986) . . . . . . .  11

Bailey v. Newland, 263 F. 3d 1022 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 14, 20

Cameron v. Fogarty, 806 F. 2d 380 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 18

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) . . . . . . . . . . . . . . 11

Cholla Ready Mix, Inc. v. Civish, 382 F. 3d 969, 978 (9th Cir. 2004) . . . . . . . . 16, 17

City of Canton v. Harris, 489 U.S. 378, 389-391 (1989) . . . . . . . . . . . . . . . . . 22, 23

Dellums v. Powell, 184 U.S. App. D.C. 275, 566 F.2d 167, (D.C. Cir. 1977) . . . . .19

Freeman v. City of Santa Ana, 68 F. 3d 1180, 1189 (9th Cir. 1995) . . . . . . . . . . . .17

Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S. Ct. 2997 (1974) . . . . . . . . . . . . .13

Gobel v. Maricopa County, 867 F. 2d 1201, (9th Cir. 1989) . . . . . . . . . . . . . . . . .13

Hartman v Moore, 126 S. Ct. 1695, 1705 (U.S. 2006)  . . . . . . . . . . . . . . . . . . . 19

Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994) . . . . . . . . . . . . . .2, 18, 21

McCade v. West  223 F. 3d 1135 (9th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . 22

Monell v. Dep't. of Soc. Servs. of New York City, 436 U.S. 658 (1978) . . . 2, 21, 22

Oviatt v. Pearce, 954 F. 2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 21

Smiddy v. Varney, 665 F.2d 261 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 2, 18, 19

United States v. Garza, 980 F. 2d 546 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . .14

Usher v City of Los Angeles, 828 F. 2d 556, 562 (9th Cir. 1987) . . . . . . . . . . . . 17

Vanelli v. Reynolds School District, 667 F. 2d 773 (9th Cir. 1982) . . . . . . . . . . . 13

United States v. Valencia-Amezcua, 278 F. 3d 901 (9th Cir. 2002) . . . . . . . . . . . .20

**STATE CASES**

<u>Campanelli v. Regents of the Univ. of California</u>, 44 Cal. App. 4th 572 (1996) . . . 13

<u>Roos v. Harris</u>, 203 Cal. 201, 202 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Tribulski v. County of Los Angeles</u>, 38 Cal.App.3d 828 (1978) . . . . . . . . . . . . . . .19

**FEDERAL STATUTES**

42 U.S.C., Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **. . . .**  9

42 U.S.C., Section 1915A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **. . .**  9

Federal Rules of Civil Procedure, Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATE STATUTES**

Cal. Penal Code, Section 137(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

Cal. Penal Code, Section 137(c) . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . 2, 9, 18, 20

Cal. Penal Code, Section 166(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

Cal. Penal Code, Section 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Cal. Penal Code, Section 273.6(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 18, 19

Cal. Penal Code, Section 422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, **8,** 9, 17, 18, 20

Cal. Penal Code, Section 1118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

# INTRODUCTION

In August 2003 plaintiff viciously battered Jennifer Bascom, the mother of his two year daughter Alina. After Ms. Bascom reported this beating to the Pleasanton Police Department, plaintiff threatened to kill Ms. Bascom, her children and her mother unless Ms. Bascom dropped the charges.

When Ms. Bascom refused to drop the charges, plaintiff continued to threaten her and compelled her (along with Alina) to drive plaintiff around the Bay Area. Extremely frightened for her daughter as well as for herself, Ms. Bascom spoke on her cell phone to two friends about her dire situation; her friends reported the matter to the Pleasanton police. The police followed up with Ms Bascom's mother Joan Bascom and she confirmed her fear for Ms. Bascom and Alina.

Police officers, including police supervisors, reviewed the Police Department's policy for activating the State wide Amber Alert Network. This Network is intended to promptly alert the public about child abductions so the child can be located as quickly as possible and removed from harm's way, and the abductor taken into custody.

The officers concluded that the Amber Alert Network should be activated for Alina and it was. Fortunately, Ms. Bascom and Alina were released unharmed.

In November 2003, plaintiff once again viciously beat Ms. Bascom. This time he was arrested. Subsequently, he was charged with, and convicted of, a number of crimes, including making criminal threats on August 30, 2003. He is now serving a lengthy prison term in state prison.

Plaintiff has filed this lawsuit concocting a theory that, among other claims, he was defamed by the Amber Alert that identified him as a kidnapper and as being Middle Eastern --

both of which the Police Department had every reason to believe were true--and that he was maliciously prosecuted—notwithstanding his conviction—and that these claims rise to the level of constitutional proportion.

This lawsuit is totally devoid of merit.  The statements were, at the very least, substantially true and were made only after reasonable investigation by the Police Department. Plaintiff's malicious prosecution and due process claims as to the Penal Code §137(c) (attempt to induce false testimony) and Penal Code §422 count (criminal threat) are barred by the principles of Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).  His malicious prosecution claim as to all of the counts stemming from August 30, 2003 are barred by the independent judgment theory. Smiddy v. Varney, 665 F.2d 261, 267 (9th Cir. 1981).  Finally, any Monell claims similarly fail because there is not one iota of evidence that the City's Amber Alert policy, on its face or as applied, reflects deliberate indifference to anyone's rights.

Summary judgment in favor of all defendants is compelled.

## STATEMENT OF FACTS

A.  Plaintiff's Attacks on, and Threats to, Jennifer Bascom.

On August 26, 2003 police officers from the City of Pleasanton Police Department investigated a report of a possible domestic battery from a victim, Jennifer Bascom. (Statement of Undisputed Material Facts (Defendants Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("UMF") 1.)  Ms. Bascom reported that plaintiff was the father of her two year old child but that she and plaintiff were not married.  (UMF 2.)  She reported that plaintiff earlier that evening had arrived at her apartment and then battered and assaulted her.  In particular, plaintiff grabbed Ms. Bascom by her hair and smacked her head against the wall. Plaintiff then dragged Ms. Bascom by her hair to a bedroom where he grabbed her neck and hair

and hit her head once again against a wall.  (UMF 3.)  After unsuccessfully trying to call the police for help, Ms. Bascom was again attacked by plaintiff who struck her face as she was holding and trying to comfort her two year old daughter, Alina.  (UMF 4.)  Plaintiff told Ms. Bascom that everyone but Alina was going to die.  (UMF 4.)  Plaintiff's battery continued against Ms. Bascom until he choked her and she closed her eyes and went limp.  (UMF 5.)

Ms. Bascom also reported to the police that plaintiff had beaten her on other occasions and that he was subject to a court order restraining him from having contact with her.  (UMF 6-7.)

Two days later, on August 28, 2003, Ms. Bascom reported to the Pleasanton police that plaintiff had phoned her numerous times since the August 26 incident and threatened to kill her, her children and her mother, Joan Bascom.  (UMF 8.)  Based on the August 26 events, and the August 28 threats, a warrant was issued for plaintiff's arrest.  (UMF 9.)

B.  Police Investigate Reports of the August 30 Kidnapping of Jennifer Bascom.

On August 30, 2003, the Police Department received a report from friends of Ms. Bascom that plaintiff had kidnapped Ms. Bascom and Alina.  (UMF 10.)  Ms. Bascom's friends and Joan Bascom (Jennifer Bascom's mother; hereafter "Joan") related to the police that Ms. Bascom had received numerous threats from plaintiff following the August 26 beating. Those threats included that he would kill Ms. Bascom, her children and Joan if the charges against plaintiff were not dropped.  Plaintiff also told one of Ms. Bascom's friends that he would rather die than go back to jail.  (UMF 11, 12, and 13.)

While Joan was talking on the phone with the police, she received two phone calls by cell phone from Ms. Bascom.   Ms. Bascom said that she and her daughter were with plaintiff but unwillingly. Plaintiff had come to her apartment and threatened to kill her, her children and Joan

if Ms. Bascom did not go with him and unless she agreed to drop the charges against him. (UMF 14.) Plaintiff made Ms. Bascom drive him in her car to a location that Ms. Bascom could not identify. (UMF 15.) When Joan told Ms. Bascom to take her daughter and get away from plaintiff (Ms. Bascom was calling her mother from inside a house), Ms. Bascom responded that she could not because, although plaintiff "was out of it", she was being watched by several of plaintiff's friends. Ms. Bascom also told Joan that she could not call 911 because her cellular phone battery was dying. (UMF 16.)

The police immediately investigated. They went to Ms. Bascom's apartment and confirmed that plaintiff's car was there but not Ms. Bascom's. They went to Ms. Bascom's apartment but when no one answered they were granted entry by the manager. Neither Ms. Bascom nor her daughter was in the apartment. (UMF 17.) They searched the apartment for any information that might lead to Ms. Bascom's and her daughter's location but were not successful. Because they had developed a belief that plaintiff had kidnapped Alina, they located a picture of Alina for investigative purposes. (UMF 18.)

C. The Amber Alert Protocol.

The State of California has established a Child Safety AMBER (America's Missing Broadcast Emergency Response) Network, the purpose of which is to coordinate a rapid response to instances of reported child abductions. In the event of a reported child abduction, public alert systems are activated to ensure the immediate dissemination of vital information regarding the victim and/or the suspect. (UMF 19.)

The California Highway Patrol (CHP) Emergency Notification and Technical Alert Center (ENTAC) is responsible for statewide coordination of Amber Alerts and the other emergency response activities associated with child abductions. ENTAC coordinates all multi-

regional and statewide activations of the Emergency Alert System (EAS). The EAS is a federal communications system designed to inform the public in cases of emergencies. The EAS is used locally through the California Office of Emergency Services Warning Center. EAS messages pre-empt radio and television broadcasts and provide immediate information to the public. (UMF 20.)

On October 16, 2002, the State of California Attorney General, California Highway Patrol, and California Broadcasters Association published the California Amber Alert, America's Missing Broadcast Emergency Response Manual ("Amber Alert Manual") to assist local law enforcement agencies in establishing Amber Alert plans for their communities. The Amber Alert Manual outlines the protocol and steps required for law enforcement agencies to initiate an Amber Alert in their communities and statewide.   It provides information about the Emergency Alert System (EAS) and how to transmit photographs, images and messages to the media, public and other law enforcement and governmental agencies. (UMF 21.)

According to the activation procedure outlined in the Amber Alert Manual, after receiving a report of a child abduction, a police supervisor must conduct a preliminary investigation and determine whether the Amber Alert activation criteria have been met. All of the following criteria must be met: (1) it has been confirmed that an abduction has occurred; (2) the victim is 17 years of age or younger, or of proven mental or physical disability; (3) there is reason to believe that the victim is in imminent danger of serious bodily injury or death; and (4) there is information available that, if disseminated to the general public, could assist in the safe recovery of the victim. (UMF 22.) A police supervisor must approve all requests for activation of the system. (UMF 26.) In order for an Amber Alert (i.e., signs with pertinent information

regarding the kidnapping flashing on the freeways) to be issued, the CHP must approve. (UMF 36.)

D.  The City of Pleasanton Had Adopted the Amber Alert Protocol

The City of Pleasanton had adopted an Amber Alert Protocol that went into effect October 1, 2002.  (UMF 23.)  The Amber Alert Protocol is the same as the protocol enumerated in the Amber Alert Manual. Because the Manual is user-friendly and contains extensive information about Amber Alerts, the Police Department uses the Manual as a resource to execute the Protocol and as its main reference in child abductions. (UMF 25.)

Prior to Alina's and Ms. Bascom's kidnapping on August 30, 2003, police officers and supervisors had received training concerning the Amber Alert Manual and the Protocol, were familiar with them, and understood the criteria and procedures to activate an Amber Alert and the other notification systems. (UMF 24, 27-30.)

E.  The Police Department Concludes that the Amber Alert Criteria Had Been Met.

The police officers who investigated this matter believed that Ms. Bascom and Alina had been abducted by plaintiff, believed that the child was in danger of serious bodily harm or death based on the statements that plaintiff said he would kill her if the charges against him were not dropped, and had information about Alina, plaintiff and the car such that the public could assist in locating the child, suspect and the vehicle.  The officers involved in the investigation discussed with Sgt. Barry Mickleburgh the activation of the Amber Alert System. (UMF 32.) Sgt. Mickleburgh reviewed the information referred to the Amber Alert Manual and concluded the situation warranted the activation of an Amber Alert. (UMF 33-34.)  Watch Commander Lt. Buckovic concurred that the criteria for an Amber Alert had been met. (UMF 35.)

The police supervisors reached that conclusion based on (1) plaintiff's history and propensity for violence, including his recent acts of violence against Ms. Bascom and his repeated threats to kill Ms. Bascom, Alina, Ms. Bascom's son, and Ms. Bascom's mother, (2) Sgt. Mickleburgh's experience as a police officer with domestic violence cases which led him to believe that Alina could be in grave danger, (3) the fact that Ms. Bascom and Alina were traveling with plaintiff unwillingly and under duress and there was no other reasonable alternative explanation for their situation, and (4) the availability of sufficient information, such as a picture of plaintiff and a description of Ms. Bascom's vehicle, to disseminate to the public to assist in locating Alina and plaintiff. (UMF 34.)

The CHP was contacted, concurred with the Amber Alert activation, and authorized an Amber Alert.  (UMF 36.)

F.   The Police Department Disseminates Information about the Kidnapping.

In investigating this matter, police officer Daly Harnish accessed the Alameda County Computerized Arrest and Booking System (CABS) database to gather information concerning plaintiff, the first entry of which was January 24, 2002. (UMF 28-30.)  On August 30, 2003, CABS listed plaintiff's race as "Middle Eastern" and included photographs of plaintiff.  (UMF 30.)

Officer Harnish used the Technology to Recover Abducted Kids (TRAK) system to gain information from CABS to develop TRAK flyers and a wanted poster.  The TRAK flyers and wanted poster included a December 13, 2002 photograph of plaintiff from CABS, his description (Middle Eastern) from CABS, as well as information about Alina and the vehicle involved.  The various information disseminated also provided that plaintiff had kidnapped Alina.   The TRAK

flyers and Wanted Poster were disseminated to law enforcement agencies throughout California and local news stations.  (UMF 30, 37.)

G.  <u>Alina and Ms. Bascom Are Finally Released by Plaintiff.</u>

Ms. Bascom telephoned the Police Department during the night of August 30, 2003, but she was not sure were she was and did not provide more information.  She was told by police to use her cell phone or a pay phone to call 911 because the CHP could then locate her and Alina. Police tried to keep her on the phone, but she would repeatedly hang up. Her calls to the Police Department and her non-responsiveness lead police to continue to believe that Alina and Ms. Bascom were in danger.  (UMF 38)

Just before midnight on August 30, 2003, the Police Department was advised that Ms. Bascom and Alina were at a Kaiser facility in Walnut Creek and unharmed.  Pleasanton police officers responded, and Ms. Bascom, after speaking with a licensed mental health worker, told them that plaintiff had continuously threatened to kill her and her children, that he was on crystal methamphetamine, that he had become very agitated when he saw the Amber Alert as they were driving across the San Mateo Bridge, and that he had allowed her to leave only after warning her "you know what to do", meaning to change her story about the August 26 incident. (UMF 39.)

H.  <u>The District Attorney Files Criminal Charges against Plaintiff and He Is Found Guilty of Having Violated Penal Code Sections 137(c) and 422 on August 30, 2003.</u>

In November 2003, plaintiff once again battered Ms. Bascom and he was arrested and jailed.  (UMF 42.)  On February 6, 2004, on behalf of the People of the State of California, the Alameda County District Attorney filed an Information with numerous counts, three stemming from plaintiff's actions on August 30, 2003, including Count Four (Penal Code §422, criminal threats), Count Five (Penal Code §236, false imprisonment by violence) and Count Six (Penal Code §137(b), intimidation of witness). (UMF 43.)

On March 8, 2004, the District Attorney filed an Amended Information (which the court allowed) with numerous counts, three stemming from plaintiff's actions on August 30, 2003, including Count Four (Penal Code §422, criminal threats), Count Five (Penal Code §137(b), intimidation of witness) and Count Nine (Penal Code §273.6(a), disobeying domestic relations court order).  (UMF 44.)

On September 14, 2004, the District Attorney filed a Second Amended Information attempting to change the Penal Code section in Count Nine from Penal Code §273.6(a) to Penal Code §166(a)(4) (disobeying court order), which the court did not grant.  (UMF 45.)

At a jury trial in September 2004, the defense made a Penal Code §1118 motion relating to Count Nine (Penal Code §273.6(a)) from the Amended Information. The court granted the motion and dismissed Count Nine. (UMF 46.)  Count Nine (Penal Code §273.6(a)) was not placed before the jury.  (UMF 47.)

The jury found plaintiff guilty of numerous counts, including Count 4 (felony, Penal Code §422) and Count 5, as a lesser included offense (misdemeanor, Penal Code §137(c)). (UMF 47.)  Plaintiff's conviction on all counts was upheld on appeal and he is currently in prison. (UMF 48.)

### PROCEDURAL HISTORY

Plaintiff, now a prisoner at Folsom State Prison, filed against defendants a <u>pro se</u> civil rights complaint under 42 U.S.C. §1983 ("Section 1983").  The district court dismissed the complaint but subsequently vacated that order and granted plaintiff leave to file an amended complaint.  Plaintiff did so and the court, pursuant to 28 U.S.C. §1915A, reviewed that amended complaint.

In its Order of Service, filed May 16, 2006, the District Court determined that, in context of the Pleasanton Police Department's issuing an Amber Alert, plaintiff had sufficiently pled a Section 1983 defamation claim against defendant police officers Fountain, Buckovic, Mickleburgh, Richer and Phelps; the court likewise determined that in that same context the amended complaint sufficiently pled a Section 1983 claim against the City of Pleasanton on a failure to train/supervise theory and/or a theory that wrongful acts were done pursuant to City policy or practice.

The Court's Order also found that the amended complaint, liberally construed, stated a cognizable malicious prosecution claim under Section 1983 against police officers Laguero, Harnish and Florez, and against the City under a failure to train/supervise and/or a theory that wrongful acts were undertaken pursuant to City policy or practice.

Finally, the Court's Order determined that the amended complaint, liberally construed, stated a Section 1983 due process claim on grounds that the defendants created and pursued false charges against him, causing plaintiff to be deprived of his liberty while waiting trial.

On June 9, 2006, the City, on behalf of all defendants, mailed an answer with a proof of service to plaintiff at the address he provided in the summons, and on June 12, 2006, (as indicated in the Court's California Northern District (CAND) Electronic Case File (ECF) Docket Report, docket entry number 24) the City's answer was filed.

In its Order of Service, filed May 16, 2006, the Court directed the defendants to file a motion for summary judgment (or inform the Court that the case cannot be resolved by such motion) by July 28, 2006. The City, on behalf of all defendants, filed a motion for summary judgment by that date.

Plaintiff propounded discovery on defendants, and, contrary to plaintiff's assertions, defendants have responded and produced discovery.  At the direction of the Court, defendants provided supplemental responses and, if plaintiff found them lacking, offered to meet and confer. Plaintiff has subsequently asked further questions (which are identical to ones previously propounded) to which defendants will again respond.

The Court dismissed defendants' motion for summary judgment, but granted defendants the opportunity to file another motion for summary judgment.

## ARGUMENT

### A.   **Standard of Review for Summary Judgment Motions**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if, as here, the declarations show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505 (1986).  A fact is material if it could affect the outcome of the action based on the governing substantive law.  Id., at 248, 106 S. Ct. 2505. The burden then shifts to the nonmoving party (here the plaintiff) to establish, beyond the pleadings, that there is a genuine issue of fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986).  Thus, Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  Id., at 321-322, 106 S. Ct. 2548.

///

**B.** **The Statements in the Amber Alert that Plaintiff Was a Kidnapper and Middle Eastern Were True or Substantially True and Defendants Were Not Negligent in Making Such Statements; Nothing in the Amber Alert Identified Plaintiff as Armed and Dangerous.**

Plaintiff's amended complaint alleges that he was defamed by the defendants when the defendants, in issuing an Amber Alert, identified him as a kidnapper, referred to him as being Middle Eastern, and referred to him as being armed and dangerous.  By reason of these identifiers, plaintiff's amended complaint suggests that he was deprived of an unbiased jury pool and fair trial and that these matters set in motion child protective proceedings which satisfy the stigma plus requirement to transform a defamation action that is not actionable under Section 1983 into one that is.

The statements as to plaintiff's being a kidnapper and as being Middle Easter, however, were true or substantially true and, because defendants had probable cause to so identify plaintiff as a kidnapper and as being Middle Eastern, defendants were not negligent in making such statements. The Police Department gathered information about plaintiff from the Alameda County CABS database.   Among the descriptions included in CABS is a description of an individual's race.  On August 30, 2003, CABS listed plaintiff's race as "middle eastern" and included photographs of plaintiff.   (UMF 28, 29.)  The Pleasanton Police Department had no reason to doubt the accuracy of the information from Alameda County on CABS.

In addition, there is no evidence that in any information disseminated by the Police Department referred to plaintiff as being armed and dangerous (UMF 41.); even if it did, that statement likewise was true or substantially true and defendants would not have been negligent in making such a statement.

///

In order to state a defamation claim under Section 1983, plaintiff must not only prove the elements of his case under the state's substantive laws, but must also show an injury to his reputation was inflicted in connection with the deprivation of a federally protected right (Gobel v. Maricopa County, 867 F. 2d 1201, 1205 (9th Cir. 1989)) and that the injury to his reputation caused the denial of a federally protected right. Vanelli v. Reynolds School District, 667 F. 2d 773, 777 (9th Cir. 1982).  Plaintiff can prove none of these.

Even if plaintiff could demonstrate that the statement was neither true nor substantially true, his Section 1983 claim still fails because there is no evidence that the police issued the statement that plaintiff was a kidnapper in order to affect public perception of him to prevent him from having a fair trial or to interfere with his parental rights.  The police issued the statement on their good faith belief in the truthfulness of the statement and in order to assist law enforcement agencies and the public in locating a two year old child that the police had probable cause to believe had been kidnapped and in imminent danger.  Plaintiff cannot produce evidence to the contrary.

In a defamation action, truth is an absolute defense.  In order to establish the defense, a defendant need not prove the literal truth of the allegedly defamatory statement so long as the imputation is substantially true as to justify the gist of the remark.  Campanelli v. Regents of the Univ. of California, 44 Cal. App. 4th 572, 581-582 (1996).  Moreover, a plaintiff must prove that the defendant was at least negligent in failing to ascertain the truth or falsity of the allegedly defamatory statement. Gertz v. Robert Welch, Inc., 418 U.S. 323, 345-347, 94 S. Ct. 2997 (1974).  The statements made here by the defendants were true or substantially true; in all events, the defendants were not, as a matter of law, negligent in their efforts to ascertain the truth of the statements.

1.   <u>It Was True or Substantially True, and Defendants Had Reasonable Cause to Believe, that Plaintiff Had Kidnapped His Victims.</u>

Based on the totality of the circumstances on and before August 30, 2003, the Police Department concluded that plaintiff had kidnapped Ms. Bascom and her daughter and reflected that conclusion in disseminating information about Alina's kidnapping.  (UMF 30, 37; see pages, <u>supra</u>, 3:14-25, 4:1-14, 6:14-24, 7.)  This statement was true or substantially true.  In addition, that the statement that Ms. Bascom was kidnapped was true or substantially true was later corroborated by Ms. Bascom herself.  In speaking with Officer Laguero after plaintiff had let her and Alina drive away without him, Ms. Bascom related that on August 30, Ms. Bascom did not believe plaintiff would let her and Alina go until the August 26 charges were dropped. (UMF 39.)  Until she was able to get the charges dropped against plaintiff, Ms. Bascom believed she and her family were at risk.  But even when she told plaintiff that she needed to go to the Police Department to change her story he refused to let her go.  (UMF 40.)   Certainly the Police Department had probable cause to make such statement and was not negligent in its efforts to ascertain the truth of the statement.

Probable cause exists as to an arrest when the facts and circumstances are present within a police officer's knowledge that are reasonably trustworthy and sufficient to lead a reasonable person to believe a crime has been committed. <u>Bailey v. Newland</u>, 263 F. 3d 1022, 1031 (9th Cir. 2001).  As with defeating a claim for a false arrest, a claim that the Police Department issued a defamatory statement likewise fails where the police, as here, show that under the totality of the circumstances, including the experience and expertise of the police officers involved, a prudent person would have concluded a fair probability that plaintiff had kidnapped Alina.  <u>United States v. Garza</u>, 980 F. 2d 546, 550 (9th Cir. 1992).

Plaintiff, therefore, has not shown and cannot show he was defamed for being referred to as a kidnapper, nor is there any evidence that any federally protected right was implicated by such referral.  This part of his claim fails.

Even if plaintiff could demonstrate that the statement was neither true nor substantially true, his Section 1983 claim still fails because there is no evidence that the police officers issued the statement that plaintiff was a kidnapper in order to affect public perception of him to prevent him from having a fair trial or to interfere with his parental rights.  As argued above, the police issued the statement on their good faith belief in the truthfulness of the statement and in order to assist law enforcement agencies and the public in locating a two year old child whom the police had probable cause to believe had been kidnapped.  Plaintiff has not and cannot produce evidence to the contrary.

2.   Defendants Had Probable Cause to Believe That It Was True That Plaintiff Was Middle Eastern.

As with the statement that plaintiff was a kidnapper, even if plaintiff can demonstrate that the statement that he is Middle Eastern is not true, his Section 1983 claim has no merit because the police officers did not issue the statement to affect public perception of plaintiff to deprive him of any constitutional right.  The police officers reasonably relied on information contained in the Alameda County CABS database that described plaintiff as Middle Eastern and this information was provided in order that other law enforcement agencies and the public could more easily identify the suspected abductor in order to prevent harm to a two year old child. There is simply no evidence to suggest otherwise.

///

///

3.   <u>There Is No Evidence That the Amber Alert Identified Plaintiff as Armed and Dangerous But If He Were So Identified, Defendants had Reasonable Cause to Believe That Statement Was True.</u>

There is no evidence that any of the information that the City of Pleasanton disseminated as to the Amber Alert concerning plaintiff ever referred to him as armed and dangerous.  (UMF 41.)  But even if it did, for many of the same reasons as set forth above, the Police Department had probable cause to believe the truth of that statement when the Amber Alert was issued. Police had reviewed plaintiff's past criminal history which showed a propensity for violence. Police knew that several restraining orders prohibited plaintiff from contacting Ms. Bascom. (UMF 7.)  Plaintiff also had a firearm registered to him at the time. (UMF 31.)   The police knew that Ms. Bascom had told her mother and her friends on several occasions that plaintiff intended to kill her, her children and her mother if Ms. Bascom did not change her story.  (UMF 8, 13, and 14.) Given this potentially volatile situation, the police certainly did not want citizens who might see plaintiff to approach or try to apprehend him.   With the information that the Police Department had in hand—plaintiff's past criminal history and use of violence, his recent, vicious beating of Ms. Bascom, and his abduction of Ms. Bascom and her child, and his statement that he would rather die than go back to jail —a prudent person would have concluded that there was fair probability that plaintiff was armed and dangerous.

C.   <u>**Azam's Claim for Malicious Prosecution Fails.**</u>

Plaintiff alleges that his civil rights were violated because he was maliciously prosecuted for the events of August 30, 2003 based on false information and false police reports prepared by various defendants.

Section 1983 does not create any substantive rights but instead is a vehicle by which a plaintiff may bring federal constitutional challenges to actions by local officials.  <u>Cholla Ready</u>

1   Mix, Inc. v. Civish, 382 F. 3d 969, 978 (9th Cir. 2004).  As the Court points out in its Order of

2   Service, filed May 16, 2006, malicious prosecution in and of itself is not a deprivation of liberty

3   without due process of law and is not a federal constitutional tort except where the prosecution is

4   pursued with malice and without probable cause, and with the intent to deprive a person of some

5   constitutional right.  Freeman v. City of Santa Ana, 68 F. 3d 1180, 1189 (9th Cir. 1995).

6   Assuming those elements are pled, a plaintiff must then demonstrate that all the elements of

7   malicious prosecution under state law have been met:  initiation of criminal prosecution,

8   malicious motivation and lack of probable cause.  Usher v City of Los Angeles, 828 F. 2d 556,

9   562 (9th Cir. 1987).  Because none of these elements are present in this case, plaintiff's claim for

10  malicious prosecution must fail.

11

12          1.   Plaintiff's Section 1983 Malicious Prosecution Claim Fails as to the Penal Code
                 Section 137(c) and 422 Counts because He Was Convicted for these Crimes
13               Which Convictions Have Been Upheld on Appeal.

14          Malicious prosecution, like defamation, is grounded in state law, and under state law, the

15  conviction of a plaintiff who alleges malicious prosecution results in a conclusive presumption of

16  probable cause for the institution of criminal proceedings. Roos v. Harris, 203 Cal. 201, 202

17  (1928).

18          To overcome the conclusive presumption of probable cause for the institution of criminal

19  proceedings in order to recover damages for an allegedly unconstitutional conviction or

20  imprisonment under Section 1983, a plaintiff must prove the conviction or sentence has been

21  reversed on appeal, has been expunged by executive order, has been declared invalid by a state

22  tribunal authorized to make such determination or has been called into question by a federal

23  court's issuance of a writ of habeas corpus.  "A claim for damages bearing that relationship to a

24  conviction or sentence that has *not* been so invalidated is not cognizable under Section 1983."

25

Heck v. Humphrey, supra, 512 U.S. at 487, 114 S. Ct. 2364 (1994), emphasis in original.  Under no circumstances may a plaintiff recover for malicious prosecution if he was convicted of the offense for which he was arrested.  Cameron v. Fogarty, 806 F. 2d 380, 386-387 (2d Cir. 1986) cert. denied.

Here a jury found plaintiff guilty of Penal Code §137(c) (attempt to induce false testimony) and Penal Code §422 count (criminal threat)  stemming from threats of death and bodily injury plaintiff made to Ms. Bascom on August 30, 2003. (UMF 48.)  Plaintiff's conviction on all counts was upheld on appeal, and his conviction and sentence has not been expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus. (UMF 49.)   Accordingly, under Heck, plaintiff's Section 1983 malicious prosecution claim fails as to the Penal Code §422 count (criminal threat) and Penal Code §137(c) (attempt to induce false testimony) count.

> 2.  Plaintiff's Claim for Malicious Prosecution as to the Remaining Count (Penal Code §273.6(a)) Fails because the Decision by the Prosecutor to Bring Criminal Charges Was Independent of the Police.

While the malicious prosecution claim based on the Penal Code §137(c) and Penal Code §422 counts must be set aside by Heck, the malicious prosecution claim based on Penal Code §273.6 (violation of protective order) - which was alleged to have occurred on August 30, 2003 - must also be rejected because the decision by the prosecutor to bring this criminal charge against plaintiff was independent of the Police Department.

Investigating police officers are immunized from damages suffered as the result of the filing of a related criminal complaint "… because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." Smiddy v. Varney, supra, 665 F.2d at 267. "Once the district attorney

has filed a complaint, it is his responsibility to gather and present such evidence as will convict the guilty or exonerate the innocent." <u>Tribulski v. County of Los Angeles</u>, 38 Cal.App.3d 828, 831 (1978); <u>Smiddy</u>, <u>supra</u>, 665 F.2d at 267.

The presumption of independence on the part of the prosecutor may be rebutted, however, where, for example, plaintiff makes a showing that the district attorney was pressured or caused by the investigating officers to act contrary to the prosecution's independent judgment, the police officers acted maliciously or with reckless disregard for the rights of the arrested person, or if the officers presented to the district attorney information known by them to be false. Id., at 266-267; <u>Dellums v. Powell</u>, 184 U.S. App. D.C. 275, 566 F.2d 167, 192-193 (D.C. Cir. 1977) (where allegation of misconduct is directed at police, a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police); <u>Hartman v Moore</u>, 126 S. Ct. 1695, 1705 (U.S. 2006).

A plaintiff must present evidence to rebut this presumption, and in this case, Azam has failed to do so. Azam can produce no evidence, and indeed there is none, that police provided to prosecutors any misinformation, concealed any information whatsoever, pressured prosecutors to prosecute the case, or took part in wrongful conduct as to the investigation of plaintiff. In fact, as to the counts relating to August 30, 2003, the District Attorney amended the Information in March 2004 and attempted to amend it again in September 2004 (at trial) to revise the Penal Code section in Count Nine from Penal Code §273.6(a) (disobeying domestic relations court order) to Penal Code §166(a)(4) (disobeying court order), but the court did not grant this amendment. The District Attorney's amendments to the Information and its subsequent attempt to further amend the Information demonstrate the prosecution's discretion in bring criminal counts against plaintiff. (UMF 44, 45.) Decisions made in the prosecution of plaintiff's criminal

trial were made by the District Attorney alone and not through any pressure or influence by the Police Department.

There were only two counts (Penal Code §137(c) and Penal Code §422) relating to August 30, 2003 that were brought before the jury. Plaintiff was found guilty of both. (UMF 48.) Plaintiff's conviction on those counts was upheld on appeal. Moreover, plaintiff's conviction or sentence has not been expunged by executive order, nor declared invalid by a state tribunal, nor called into question by the issuance of a writ of habeas corpus. (UMF 49) For all these reasons, plaintiff's Section 1983 malicious prosecution claim fails.

### D. Plaintiff's Due Process Claim Fails Because There Was Probable Cause to Arrest Him.

Plaintiff's amended complaint, liberally construed, alleges that the defendants' creation and pursuit of false charges against him resulted in a loss of liberty while he was incarcerated awaiting trial. This claim fails however because there was probable cause to arrest him arising out of the August 26 and August 30 incidents and he was convicted for criminal acts arising out of the August 30 incident, which convictions have been upheld on appeal. (UMF 40, 49.)

Probable cause to arrest exists when a police officer knows facts and circumstances which are reasonably trustworthy to warrant a prudent officer to believe that the plaintiff had committed a crime. Bailey v. Newland, supra, 263 F. 3d at 1031. Courts apply a totality of circumstances test, meaning that if a prudent person would conclude that there was a fair probability that plaintiff committed a crime, then the police had probable cause to arrest plaintiff. United States v. Valencia-Amezcua, 278 F. 3d 901, 906 (9th Cir. 2002).

///

///

Based on the facts in UMF's 1 – 18, and as described above, the police had probable cause to arrest plaintiff arising from the August 26, 2003 and August 30, 2003 incidents.

Plaintiff's alleged due process claim also fails because he was convicted of violating Penal Code §137(c) (misdemeanor) and Penal Code §422, and sentenced for §422 to eight months in jail.  (UMF 48).  Heck, supra, teaches that a plaintiff who has actually been convicted of a crime, and whose conviction has not been overturned or otherwise expunged, cannot prevail, for purposes of Section 1983, on grounds that his due process rights were violated.  As stated previously, plaintiff was convicted arising out of the events of August 30, 2003 and his conviction has been upheld on appeal.  (UMF 49.) Plaintiff's due process claim therefore fails.

### E.    Plaintiff's Section 1983 Claims Against the City (and its Police Department) Fail Because There is No Evidence of Inadequate Training or Any Evidence of a Policy or Practice Giving Rise to a Constitutional Violation.

For the reasons stated above, plaintiff cannot establish a Section 1983 claim under any of his theories as to the individual officers.  For those same reasons, he also cannot state a claim against the City (or its Police Department) because his malicious prosecution and due process claims are precluded by the independent judgment theory and his defamation action is precluded because the statements made were true or substantially true and, in either event, were made with probable cause and without negligence.  But even if those claims for those reasons are not precluded as to the City, the claims still fail because neither the City's Protocol concerning activating the Amber Alert System, the training/supervising provided by the City, nor the implementation of the Protocol run afoul of any constitutional violation.

A city is considered a "person" for purposes of Section 1983 and may be sued directly for damages "where the action that is alleged to be unconstitutional implements or executes a policy…officially adopted and promulgated by [the city]." Monell v. Dep't. of Soc. Servs. of

New York City, 436 U.S. 658, 690 (1978).  In order, however, to hold the City liable under

section 1983, plaintiff must show "(1) that he possessed a constitutional right of which he was

deprived; (2) that the [City] had a policy; (3) that the policy 'amounts to deliberate indifference'

to [plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the

constitutional violation.'" Oviatt v. Pearce, 954 F. 2d 1470, 1474 (9th Cir. 1992), quoting City of

Canton v. Harris, 489 U.S. 378, 389-391 (1989).

   In addition, there must be a "direct causal link" between the policy and injury and

plaintiff must demonstrate that the injury resulted from a "permanent and well settled practice."

McCade v. West  223 F. 3d 1135, 1141 (9th Cir. 2000).  A failure to train or supervise can

amount to a policy sufficient to impose liability on a local government.  City of Canton, supra,

489 U.S. at 389-390.

   Although the City has a policy concerning its activation of the Amber Alert Network,

there is nothing in that policy as adopted that would amount to deliberate indifference to any

constitutional right.  Moreover, because the City has implemented the policy only once since the

policy's adoption in 2002, there is no evidence to suggest that there is a permanent and well

settled practice of violating constitutional rights, even if there were any merit to plaintiff's

contention that the policy somehow violated his rights.  Finally, the City's police supervisors all

received adequate training in the policy's implementation and carried out the policy consistent

with that training.

   There is nothing in the policy on its face that is defamatory to plaintiff (or anyone else),

that would trigger a claim for malicious prosecution, or that states a cognizable claim for a

violation of due process.

Once the Protocol was adopted, the City provided ample training to its supervisors to implement it. The Protocol and an Amber Alert video were subjects of discussion at supervisors' training sessions. Sgt. Mickleburgh and Lt. Buckovic, the supervisors during the investigation of Alina's abduction, received such training prior to August 30, 2003. (UMF 24.)

Sgt. Mickleburgh carried out the activation consistent with the Protocol. He reviewed plaintiff's history for violence against Ms. Bascom and plaintiff's repeated threats to kill Ms. Bascom, her children and Ms. Bascom's mother, as well as his experience as a police officer with domestic violence cases, to reasonably conclude that Alina could be in grave danger. Sgt. Mickleburgh knew that Ms. Bascom and Alina were with plaintiff unwillingly and under duress and there was no other reasonable explanation for their situation, leading him to believe that Alina had been kidnapped. Sgt. Mickleburgh also had sufficient information, such as a picture of plaintiff, and a description of the car in which they were traveling, to disseminate the information to the public to assist in locating Alina and the plaintiff. (UMF 27, 32, 33.) The information available to the police concerning plaintiff's ethnicity indicated that he was Middle Eastern. (UMF 29.) Accordingly, there is nothing to suggest that there were any deficiencies in the training provided and received, let alone any "deliberate indifference" to the rights of the persons who could be affected by the Amber Alert Network policy. See, City of Canton, supra, 489 U.S. at 388.

Here the claims fail because neither the policy itself, the training provided by the City, nor the implementation of the policy rises evinces a policy that runs afoul of constitutional rights, a lack of training giving rise to a constitutional violation, or any wrongful acts arising out the City's implementation of the policy.

1

## CONCLUSION

2          For the reasons expressed above, this Court should grant summary judgment in favor of

3 all defendants.

4 Dated:  June 1, 2007

5                                                    Michael H. Roush
                                                   City Attorney, City of Pleasanton
6                                                   Attorney for all Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## PROOF OF SERVICE BY MAIL

### (C.C.P. 1013A and 2015.5)

STATE OF CALIFORNIA  )
                           ) ss.
COUNTY OF ALAMEDA  )

       I am a citizen of the United States and a resident of Alameda County; I am over

the age of eighteen years and not a party to the within action or proceeding entitled

Zameer Riaz Azam v. City of Pleasanton, et al. (Case Number CV-05-V-00510 MHP);

my business address is:  123 Main Street, Pleasanton, California 94566.

On June 1, 2007, I served the within **MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY
JUDGMENT; DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT;
DECLARATION OF DETECTIVE DALY HARNISH IN SUPPORT OF
DEFENDANTS MOTION FOR SUMMARY JUDGMENT; DECLARATION OF
LIEUTENANT JOSEPH BUCKOVIC IN SUPPORT OF DEFENDANTS MOTION
FOR SUMMARY JUDGMENT; DECLARATION OF MARGARET MARY
GOULART IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY
JUDGMENT; DECLARATION OF SERGEANT BARRY MICKLEBURGH IN
SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT;
DECLARATION OF DETECTIVE AARON FOUNTAIN IN SUPPORT OF
SUMMARY JUDGMENT; DECLARATION OF JEFF LAUGERO IN SUPPORT
OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT; DECLARATION
OF JAMES MARSHALL IN SUPPORT OF DEFENDANTS MOTION FOR
SUMMARY JUDGMENT; DECLARATION OF SERGEANT PAT WALSH IN
SUPPORT OF SUMMARY JUDGMENT; DECLARATION OF MICHAEL H.
ROUSH IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY
JUDGMENT; DECLARATION OF DANIELLE LONDON IN SUPPORT OF
DEFENDANTS MOTION FOR SUMMARY JUDGMENT** on the parties in said

action or proceeding, by placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Pleasanton, California, addressed as follows:

> Zameer Riaz Azam  V59327
> Folsom State Prison
> P.O. Box 950
> Folsom, CA  95763

Executed on June 1, 2007, at Pleasanton, California.  I, Lisa Tarnow, declare under penalty of perjury, that the foregoing is true and correct.

Lisa Tarnow

(u:lt\proofs\07\azam-6.1.07)